Louis J. FIOTO, on behalf of himself and all other persons similarly situated, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF the ARMY and Howard Callaway, as Secretary of the Army, Defendants.

No. 75 C. 44.

United States District Court, E. D. New York.

Jan. 14, 1976.

Kalman Finkel, Attorney-in-Charge, Civ. Div., The Legal Aid Society, New York City, Joan Mangones, The Legal Aid Society, Staten Island (David Goldfarb and Marshall W. Green, The Legal Aid Society, Staten Island, of counsel); John E. Kirklin, The Legal Aid Society, Civ. Appeals Bureau, New York City, for plaintiffs.

David G. Trager, U. S. Atty., E.D. N.Y., Brooklyn, N.Y. (J. Christopher Jensen, Asst. U. S. Atty., Brooklyn, N.Y., of counsel), for defendants.

OPINION

Before LUMBARD, Circuit Judge, and BRUCHHAUSEN and BRAMWELL, District Judges.

LUMBARD, Circuit Judge.

Louis Fioto, on behalf of himself and all others similarly situated,[1] challenges the constitutionality of 10 U.S.C. § 1331(c) which, in combination with § 1331(a), governs the availability of retirement pay for members of the non-regular military service (i. e., Reserves and National Guard). Pursuant to 28 U.S.C. §§ 2282, 2284 this court was convened to consider plaintiff's non-frivolous claim.

■ The facts are undisputed and the parties[2] have filed cross-motions for summary judgment. Fioto served in the Army National Guard for a total of twenty-seven years: from 1933 to 1940 and then again, for over twenty years, from 1947 until he was honorably discharged on December 9, 1967, having reached the mandatory retirement age of sixty.[3] Due to injuries resulting from an automobile accident in 1941 he did not, however, serve during World War II. Nor did he participate in the Korean War since his unit was never called to active duty.

In anticipation of his retirement, plaintiff filed an application for retirement pay with the Department of the Army on September 5, 1967. Fioto maintains, and the Army does not deny, that he satisfied each of the requirements set forth in § 1331(a): (1) he was sixty years old at the time of retirement; (2) he had completed twenty years of

1. Judge Bruchhausen, as the convening judge, entered an order on January 12, 1976, certifying plaintiff's action as a class action under the provisions of Rule 23(b)(2), Federal Rules of Civil Procedure.

2. Plaintiff's complaint named both the Secretary of the Army and the United States Department of the Army as party defendants. The Department of the Army is not an administrative entity which Congress has authorized to be sued eo nomine and thus enjoys sovereign immunity from suit. Keifer & Keifer v.

Reconstruction Finance Co., 306 U.S. 381, 390, 59 S.Ct. 516, 518, 83 L.Ed. 784, 789 (1939). Throughout the remainder of this opinion, the term defendant will refer exclusively to the Secretary of the Army, acting in his official capacity.

3. Fioto also served in the United States Coast Guard from 1927 to 1931. That service, however, has no bearing on his entitlement to retirement pay under the provisions of 10 U.S.C. § 1331 et seq.

satisfactory service as defined in § 1332; and (3) he was not entitled to retirement pay from the armed forces under any other provision of law. Nonetheless, the Army denied his application on the ground that he failed to satisfy the proviso contained in § 1331(c), which states that any person who served in the National Guard prior to August 16, 1945, is ineligible for retirement pay unless he performed active duty during World War I, World War II, or the Korean War.[4]

Claiming that § 1331(c) was never intended to disqualify an individual who had served a complete term of twenty years following 1947, plaintiff renewed his application on February 21, 1974. This second effort was rejected as well by the Army on the basis of Fioto's pre-1945 service. Appeal to the Army Board for Correction of Military Records in June 1974 proved unavailing and no administrative remedies remain to be exhausted. At the time that plaintiff's complaint was filed in January 1975, his accrued benefits totalled slightly less than $8,000.

Defendant concedes that the mandamus statute, 28 U.S.C. § 1361, provides this court with a jurisdictional basis for granting Fioto the relief which he requests. See *National Treasury Employees Union v. Nixon,* 160 U.S.App.D.C. 321, 492 F.2d 587, 602–603 (1974). But relying principally on *Carter v. Seamans,* 411 F.2d 767 (5th Cir. 1969), *cert. denied,* 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970), the Army suggests that it is inappropriate for this court to grant mandamus as the plaintiff has an "adequate" remedy by bringing suit in the Court of Claims.

■ While it is true that mandamus is controlled by equitable principles, although technically a legal writ, *White-*

4. Section 1331(c) provides:

No person who, before August 16, 1945, was a Reserve of an armed force, or a member of the Army without component or other category covered by section 1332(a)(1) of this title except a regular component, is eligible for retired pay under this chapter, un-

*house v. Illinois Central R. Co.,* 349 U.S. 366, 373, 75 S.Ct. 845, 850, 99 L.Ed. 1155, 1160 (1955), we disagree with the defendant that equity requires dismissal of the plaintiff's complaint. First, it is far from certain that Fioto's remedy in the Court of Claims would be as "adequate" as the Army asserts. In *Lee v. Thornton,* 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975), the Supreme Court held that the Tucker Act, 28 U.S.C. § 1346, did not empower a district court to enjoin the operation of an unconstitutional act of Congress, even if incident to an adjudication of a claim for money damages. There is no reason to believe that the concurrent jurisdiction of the Court of Claims under 28 U.S.C. § 1491 is any broader. See *United States v. Sherwood,* 312 U.S. 584, 590–91, 61 S.Ct. 767, 771, 85 L.Ed. 1058, 1063 (1941). This is especially so since the Tucker Act does not confer general equitable powers upon the Court of Claims. *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52, (1969). Congress, in a 1972 amendment to 28 U.S.C. § 1491, did authorize the Court of Claims "as an incident of and collateral to any [money] judgment," to "issue orders directing . . . placement in appropriate duty or retirement status." However, Congress, has not, at least explicitly, conferred upon the Court of Claims the authority to void an unconstitutional statute. *Carter v. Seamans, supra,* did not involve such a request for relief.

Second, and more importantly, Fioto has already encountered nine years of unjustifiable delay in securing the retirement pay to which we today hold he was clearly entitled. Under these circumstances, it would be manifest inequity to send him to another court to suffer another, inevitable period of delay.

■ It is agreed that if plaintiff's service in the National Guard had been less he performed active duty after April 5, 1917, and before November 12, 1918, or after September 8, 1940, and before January 1, 1947, or unless he performed active duty (other than for training) after June 26, 1950 and before July 28, 1953.

limited to the years 1947 to 1967, he would now be receiving retirement pay. The Army, however, insists that Fioto's earlier service from 1933 to 1940 bars him from all benefits under the "express statutory language" of § 1331(c). *Mayer v. United States,* 201 Ct.Cl. 105, 112 (1973). Thus, in effect if not in intent, Fioto is being penalized for having devoted seven additional years to the service of his country. This result bears no rational relationship to the legislative objectives which led to the enactment of Title III of the Army and Air Force Vitalization and Retirement Equalization Act of 1948, 62 Stat. 1087. Accordingly, we hold that as applied to plaintiff and the other members of his class, § 1331(c) violates the minimum requirements imposed by the Equal Protection Clause.[5] *E. g., Johnson v. Robison,* 415 U.S. at 374, 94 S.Ct. at 1164, 39 L.Ed.2d at 396; *Department of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973).

A review of the legislative history of Title III plainly reveals that Congress hoped to limit the anticipated post-war exodus from the Reserves and National Guard by providing retirement pay to those who had satisfactorily served for twenty years, thus creating an incentive to continued service. See generally, U. S. Code Congressional Service, 1948, Vol. 2, p. 2161. Yet, as defendant has construed § 1331(c) it creates a disincentive to the one group whose service would have been most valuable in 1948—those with previous experience gained in the years prior to World War II.

The Army correctly points out that the Senate was concerned with the potential cost of the program as initially drafted in the House. But that concern did not, as the Army contends, lead Congress to create a purely arbitrary distinction between those who had served pre-1945 and those who had not. Rather, at the Senate's insistence, Congress adopted the reasonable requirement that an individual serve twenty "satisfactory" years, as measured by an objective standard.[6] Since it was impossible retroactively to grade the quality of the services rendered prior to World War II, Congress sought to discount those years in determining whether a National Guardsman or Reservist had reached the requisite twenty-year total. An understandable exception was provided for those who had seen active duty during one of the world wars.

Pre-1940 service was thus made a nullity for the purposes of retirement pay. There is simply no evidence in the legislative history that Congress intended that any pre-1940 service would create a perpetual bar to future benefits. Indeed, testimony at the Senate hearings made plain that by remaining in the National Guard an individual could achieve his twenty year total despite the presence of some years in which he failed to meet the 50 point requirement. "He would get credit for the points if he ultimately got twenty years of service." Hearings before Committee of Armed Services, U. S. Senate, 80th Cong.2d Sess. June 8, 1948 at p. 70. There is no dispute that plaintiff has served his twenty satisfactory years commencing with 1947.

As the government admitted during oral argument, the most reasonable as-

---

5. As a suit against a federal officer, this action must, of course, rely on the Fifth Amendment's Due Process Clause. But, "if a classification would be invalid under the Equal Protection Clause of the Fourteenth Amendment, it is also inconsistent with the due process requirement of the Fifth Amendment." *Johnson v. Robison,* 415 U.S. 361, 364 n. 4, 94 S.Ct. 1160, 1164, 39 L.Ed.2d 389, 396 (1975); *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

6. The objective standard chosen by Congress is set forth in 10 U.S.C. § 1332. In order to qualify for retirement pay, a Reservist or National Guardsman must complete twenty years of service, in each of which he has amassed at least 50 credit points. Points are awarded on the following basis: fifteen points a year for membership in the Reserves or National Guard and one point for each day of active duty, annual training, attendance at a prescribed course of instruction or attendance at drills. 10 U.S.C. § 1332(a)(2).

sumption in the instant case is that Congress simply never anticipated a situation such as Fioto's. We need not and should not defer to the Army's construction of § 1331(c) when that construction is at odds with Congress' clear purposes and goals in enacting the statutory scheme of which § 1331(c) is just a part.

We therefore grant Fioto's motion for summary judgment, direct that he henceforth be placed on the Army's retirement rolls, and order that he immediately receive any and all retirement benefits which have accrued since his honorable discharge and which have been unlawfully denied him as a result of the Army's erroneous ruling. We also direct the Secretary to place all others in Fioto's class on the Army's retirement rolls and grant them retirement benefits accordingly. The defendant's cross-motion for summary judgment is correspondingly denied.

So ordered.