## ALEXANDER, SECRETARY OF THE ARMY v. FIOTO

No. 75–1704.  Argued March 1, 1977—Decided April 4, 1977

STEVENS, J., delivered the opinion of the Court, in which all Members joined, except REHNQUIST, J., who took no part in the consideration or decision of the case.

*Stephen L. Urbanczyk* argued the cause for appellant *pro hac vice.*  With him on the brief were *Solicitor General Bork, Assistant Attorney General Lee, Deputy Solicitor General Jones,* and *William Kanter.*

*David Goldfarb* argued the cause for appellee.  With him on the brief were *Kalman Finkel, Helaine Barnett, Joan Mangones,* and *John E. Kirklin.**

---

*\*Penrose Lucas Albright* filed a brief for the United States Merchant Marine Academy Alumni Assn. as *amicus curiae* urging affirmance.

Mr. Justice Stevens delivered the opinion of the Court.

After World War II Congress authorized retirement pay for nonregular military personnel with at least 20 years of service in the Reserves or National Guard.[1] However, under 10 U. S. C. § 1331 (c), those who had been in the Reserves before World War II are not eligible for benefits unless they performed active duty during wartime.[2] Appellee had no such active duty.[3] He contends that he may not be denied benefits for which he is otherwise eligible simply because he had prewar service in the Guard. In the District Court he argued that the statute violates the equal protection principle inherent in the Due Process Clause of the Fifth Amendment. In this Court he also argues that the statute should be construed as

---

[1] The Army and Air Force Vitalization and Retirement Equalization Act of 1948, 10 U. S. C. § 1331 *et seq.*, authorizes retirement pay for reservists and guardsmen who have accumulated 20 years of eligible service, are 60 years of age, and are not disqualified by § 1331 (c).

[2] Section 1331 (c) provides:

"No person who, before August 16, 1945, was a Reserve of an armed force, or a member of the Army without component or other category covered by section 1332 (a)(1) of this title except a regular component, is eligible for retired pay under this chapter, unless he performed active duty after April 5, 1917, and before November 12, 1918, or after September 8, 1940, and before January 1, 1947, or unless he performed active duty (other than for training) after June 26, 1950, and before July 28, 1953."

[3] Appellee served in the National Guard from 1933 to 1940 and again from 1947 to 1967. The record does not reveal the reason for appellee's failure to serve during World War II. Although he was in the Guard between June 26, 1950 and July 28, 1953, he performed no active duty (other than for training) during that time; again, the record does not reveal why he did not perform active duty during the Korean hostilities. At oral argument in the District Court appellee's counsel represented that appellee had been unable to serve in World War II because of injuries received in an automobile accident, but there is no support in the record for this assertion. For purposes of this appeal, however, we assume that his failure to serve in World War II was involuntary.

merely providing that his years of prewar service must be ignored for the purpose of determining his eligibility. We reject both arguments.

The case is here on direct appeal from a summary judgment entered by a three-judge District Court sitting in the Eastern District of New York.[4] That court ordered the Secretary of the Army to pay retirement benefits to appellee and to place the members of the class he represents on the retirement rolls.[5] 409 F. Supp. 831 (1976). Because the three-judge court was properly convened,[6] we have jurisdiction even though the decision of the District Court can be read as resting on its interpretation of the statute rather than squarely on constitutional grounds.[7]

Section 1331 (c) plainly discriminates between persons who

---

[4] Federal jurisdiction was predicated on 28 U. S. C. § 1361.

[5] The class as certified by the District Court, App. 38, includes all

"persons at least 60 years of age who have performed 20 years of service computed under 10 USC § 1332 since August 16, 1945 and otherwise are entitled to Retired Pay for Non-Regular Military Service, except that before August 16, 1945 they were a Reserve of an armed force or a member of the Army without component and did not perform active duty after April 5, 1917 but before November 12, 1918, or after September 8, 1940 and before January 1, 1947, or after June 26, 1950 and before July 28, 1953, and therefore were disqualified from Retired Pay Benefits by virtue of 10 USC § 1331 (c)." *Id.*, at 6.

The District Court stayed its judgment as to all members of the class other than appellee.

[6] The only basis for injunctive relief set forth in the complaint was the alleged unconstitutionality of § 1331 (c); a three-judge court was therefore required to hear the application for injunctive relief. See 28 U. S. C. § 2282.

[7] Title 28 U. S. C. § 1253 provides:

"Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges."

See *Philbrook* v. *Glodgett*, 421 U. S. 707, 712–713, n. 8.

were in the Reserves before August 16, 1945, and those who performed their first service after that date. The statute says that the members of the former group are not "eligible for retired pay" unless they performed active duty during specified dates when the country was engaged in hostilities.

Appellee acknowledges that the statute creates two distinct classes of reservists. He contends, however, that the members of his class are not ineligible for benefits, but merely are prevented from counting pre-World War II service as part of the 20 years of "satisfactory service" needed to qualify.[8] The argument is foreclosed by the plain language of the statute. Moreover, the legislative history reveals a congressional purpose inconsistent with appellee's interpretation. .

Section 1331 (c) is a description of *persons* who are not eligible for retirement pay.[9] It does not describe periods of service which may or may not be counted toward eligibility. Its text plainly disqualifies the persons it describes. Furthermore, § 1331 (a), which defines the conditions of eligibility for retirement pay, states that a person meeting these conditions is entitled to retirement pay "[e]xcept as provided in subsection (c)." It is difficult to believe that language this clear could be the product of a drafting error. We are persuaded that Congress meant what it so plainly said.

An explanation for excluding certain persons from benefits— as opposed to excluding part of their service—was given by

---

[8] The same bill that contained § 1331 (c) also created a point system for determining whether sufficient service was performed in a given year to count toward the 20-year requirement. 10 U. S. C. § 1332. Years served before the point system are automatically considered "satisfactory service." § 1332 (a). Appellee contends that Congress generally excluded such years of prior service because the point system had not been in effect, and therefore there was no way to determine whether substantial service had been rendered in those years. Then, appellee argues, Congress made an exception for those men who served in World War II as a reward for their wartime service.

[9] Section 1331 (c) is quoted in full in n. 2, *supra*.

the chairman of the Senate Armed Services Committee during the hearings on the bill. He pointed out that the provision would "make certain that no one who drops out of the Reserves to avoid service in the war is qualified under the bill. This is concurred in by the services and the Reserves." [10] The Senate Committee had been advised by the Army Chief of Staff that: "The purpose of reservists was to fight in the war. If he did not fight in the wars we did have, we feel he should not qualify." [11]

These comments describe a purpose to disqualify certain persons rather than merely a purpose to treat a part of their service as unsatisfactory.

In 1958 Congress amended § 1331 (c) to remove the disqualification for persons who served in the Korean conflict.[12] The history of this amendment reflects an intent to make retirement pay available for otherwise "ineligible persons" rather than a desire to classify periods of service as satisfactory.[13] The statutory language and its legislative history

---

[10] Hearings on H. R. 2744 before the Senate Committee on Armed Services, 80th Cong., 2d Sess., 77 (1948).

[11] *Id.*, at 29.

[12] In the interim, there was a slight change in the language of the provision. As originally enacted, it provided that such persons would not be eligible for "retirement benefits." § 302 (a), 62 Stat. 1087. When Title 10 was enacted into positive law, the language was changed to "retired pay." 70A Stat. 102. Appellee argues that the original language was ambiguous, because the phrase the "right to accrue retirement benefits" was used elsewhere in the same Act to refer to the accrual of credit for years of satisfactory service. See § 304, 62 Stat. 1089. But we see no reason to assume that the same meaning was intended, for one section refers to "accrual" of *additional* benefits, while the other refers to "eligibility" for *any* benefits.

[13] For instance, the Senate Report described the amendment as a bill "to make retired pay for nonregular service available to certain persons . . . ." S. Rep. No. 2188, 85th Cong., 2d Sess., 1 (1958). The same understanding was expressed during the House hearings by the representative of the Defense Department. He stated that "[t]he Department of

convincingly demonstrate that Congress made a deliberate decision to deny retirement pay to members of appellee's class.

Appellee argues that the Constitution requires equal treatment for all reservists with 20 years of satisfactory service and that it is totally irrational to disqualify some of them simply because they had *additional* years of service before August 16, 1945. We disagree.

The retirement pay program was intended to provide an inducement to qualified personnel to remain active in the Reserves in order to maintain a cadre of trained soldiers for use in active duty if the need should arise.[14] Such an inducement would be unlikely to achieve its intended purpose if offered to persons who had dropped out of the Reserves to avoid service during the war.[15] Moreover, the decision not

---

Defense favors the extension of such retirement benefits to a small group of Reserve personnel who would be eligible for this benefit but for the fact that they do not meet the requirement of having performed active service during World Wars I or II." Hearings on Consideration of S. 2630, H. R. 4381, H. R. 8775 and H. R. 781 before Subcommittee No. 1 of the House Committee on Armed Services, No. 88, 85th Cong., 2d Sess., 7897 (1957). A later colloquy is to the same effect:

"Mr. Winstead. And there would be no differential in the pay for retirement with those years counted if this passed as to what they would get if we did not pass this?

"Mr. Ducander. They won't be able to retire at all.

"Mr. Winstead. They should be covered." *Id.*, at 7905.

[14] The Senate Report states that the primary purpose of the Act was "to provide an inducement to members of Reserve components to remain active in the Reserves over a long period of time, thereby providing a better trained and more ready Reserve to meet the needs of our national-defense structure." S. Rep. No. 1543, 80th Cong., 2d Sess., 9 (1948). See also Hearings on H. R. 2744, n. 10, *supra*, at 13 (testimony of Gen. Dahlquist), 22–24 (testimony of Col. Maas).

[15] See the excerpt from the legislative history quoted, *supra*, at 638. Although the statutory exclusion is broader than necessary to accomplish that purpose, it cannot be doubted that it would apply to the persons that Congress wanted to be *certain* to disqualify.

to offer the inducement to reservists whose failure to serve was involuntary, reflects a predictive judgment that a past obstacle to active service may have a continuing effect on future availability.

When Congress enacted the statute in 1948, it did not penalize the members of appellee's class; it merely made a judgment that they were somewhat less desirable prospects for future active duty than others, and therefore decided not to offer them a special inducement to remain in the Reserves. The statutory exclusion is unquestionably the product of a deliberate and rational choice which Congress had the constitutional power to make.

The judgment of the District Court is reversed.

*It is so ordered.*

Mr. Justice Rehnquist took no part in the consideration or decision of this case.