CW2 (Ret.) Neil F. McCARRON, Jr., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 561–81C.

United States Claims Court.

July 2, 1987.

## OPINION

HORN, Judge.

This military pay case came before this Court on September 14, 1981,[1] and is now before the Court on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.

Plaintiff, Neil F. McCarron, Jr., a former United States Army officer, brought this action under Section 202 of the Army and Air Force Vitalization and Retirement Equalization Act of 1948, c. 708, 62 Stat. 1081, 10 U.S.C. § 971b, *repealed by* 70A Stat. 641 (1956), reenacted and codified as 10 U.S.C. § 1331, Act of August 10, 1956, c. 1041, 70A Stat. 1, 102; Sections 14(d) & (f) of the Warrant Officer Act of 1954, c. 249, 68 Stat. 157, *repealed by* 70A Stat. 641, reenacted and *codified* as 10 U.S.C. § 1371 (1976); 10 U.S.C. § 277 (1976), and the Fifth Amendment to the Constitution. Plaintiff seeks retirement in the higher grade of major, effective back to April 1, 1980.

At the time of his final retirement from the military in 1980, McCarron petitioned the Army Board for the Correction of Military Records (ABCMR), for an upgrade of his retirement pension rate from that of a noncommissioned chief warrant officer two, to reflect the highest temporary com-

---

1. This case was transferred to Judge Horn after the retirement of Judge Wood in 1986. Plaintiff filed a Motion for Leave to File Supplemental Authority on May 12, 1987. Plaintiff's motion was allowed on May 12, 1987, and plaintiff's submission was entered into the record on that date.

missioned grade, that of major, in which he had satisfactorily served at any time during his military career. Although plaintiff had completed the required 20 years of service to retire, the ABCMR found that the plaintiff was not eligible for a retirement upgrade. Plaintiff then sought a review of the ABCMR decision in this Court and has now moved for summary judgment.

Defendant contends in its cross motion for summary judgment that at the time plaintiff retired, he was required to accumulate a total of 30 years of active service, with satisfactory performance, to qualify for a retirement upgrade to the rank of major. This Court agrees with the defendant and with the September 23, 1981 ABCMR decision, which denied plaintiff a retirement upgrade to the higher rank of major, with accompanying back pay. Plaintiff's petition for summary judgment is, therefore, denied and defendant's cross motion for summary judgment is hereby granted.

### Background

Plaintiff entered active military service in the Army on January 31, 1960, and progressed through regular rank advancements, attaining the grade of major in 1967. In 1974, and again in 1976, plaintiff was considered, but not selected for promotion to the rank of lieutenant colonel by Army selection boards.[2] Following these two non-selections for promotion, the Army notified plaintiff that he would be released from active duty pursuant to 10 U.S.C. § 3303 (1976). Due to his pending release, plaintiff applied for a noncommissioned warrant officer appointment in the Army Reserve. On August 5, 1976, after sixteen and one half years of active military service, plaintiff voluntarily resigned his regular commission of major and on the next day accepted a noncommissioned warrant

officer appointment in the United States Army active reserve.

Four years later, on April 1, 1980, plaintiff voluntarily retired from active reserve duty in the grade of noncommissioned chief warrant officer two (CW2). At the time of retirement, due to his cumulative career in the regular and reserve Army, plaintiff had accrued twenty years and two months of active military service.[3]

In March 1981, plaintiff applied to the Army Board for the Correction of Military Records (ABCMR) seeking a review of his military records and requesting that his retirement grade be advanced to that of a commissioned major, with retroactive back pay for retirement not received. On September 23, 1981, the ABCMR found that a retiring noncommissioned warrant officer, such as the plaintiff, would be entitled to retirement in a higher commissioned officer grade in which he had previously served only if his combined commissioned and noncommissioned years of service totaled 30 years. Therefore, the ABCMR found the plaintiff ineligible for a retirement upgrade, as requested.

Plaintiff filed his complaint in this Court on September 14, 1981, and subsequently a motion for summary judgment on September 11, 1985. He seeks a review of the ABCMR's decision, a correction of his military records and a change in his retirement grade to reflect an upgrade of his retirement rank from noncommissioned chief warrant officer two (CW2) to the level of a commissioned major. He also requests an additional award to cover back, retirement pay, retroactive to April 1, 1980.

### Discussion

■ The parties submit that this case presents an issue of statutory construction. Plaintiff relies on several statutes, including a number of which had been repealed at the operative time, to attempt to con-

---

**2.** Plaintiff acknowledged at oral argument that the composition of the Army selection boards which considered his promotions is not an issue in this case.

**3.** Prior to his retirement, plaintiff had requested a determination from the Department of the

Army of his eligibility for retirement in the rank of major. The Army authorities advised him then that he could not retire as a major until the sum of his active service and service on the retired list totalled at least thirty years.

struct a theory to support the relief he seeks.[4] However, as defendant contends, the controlling statute in effect in 1980, when plaintiff retired was 10 U.S.C. § 3964 (1976), which provided the following:

> Each warrant officer of the Army, and each enlisted member of the Regular Army, who is retired before or after this title is enacted is entitled, when his active service plus his service on the retired list, for totals 30 years, to be advanced on the retired list to the highest temporary grade in which he served on active duty satisfactorily, as determined by the Secretary of the Army. 10 U.S.C. § 3964 (1976).

This statute clearly required an Army warrant officer who retired in 1980, although eligible to retire after 20 years, to have completed 30 years of total service in order to be advanced on the retired list, for retirement pay purposes, to the highest temporary grade in which he had served satisfactorily on active duty. This is to be distinguished from commissioned officers who, at the time they are eligible to retire after 20 years, are entitled to be retired in the highest grade in which they served satisfactorily on active duty, in accordance with 10 U.S.C. § 1370 (1980 Supp. IV). Until 1986, when chief warrant officers were granted commissioned status, 10 U.S.C. § 3964 controlled the retirement pay rate of all Army warrant officers who retired.[5]

In the case before the Court, plaintiff voluntarily retired from the Army on April 1, 1980, after only 20 years of service. In accordance with the statutory requirements of 10 U.S.C. § 3964, effective in 1980 at the time of plaintiff's retirement, he could only have been advanced on the retired list to the grade of major in April of 1990, at which time he would have met the 30 year requirement.

This Court finds the clear meaning of 10 U.S.C. § 3964, as well as of the other relevant statutes and case law, to be unambiguous and dispositive. As a result, the Court does not find the need to resort to the legislative history to discern the statutory meaning. Plaintiff's anthology of obsolete statutes pertaining to military retirement does not preclude the application of the general rule for entitlement in military cases, that a "soldier's entitlement to pay [and retirement benefits] is dependent upon statutory rights." *Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961). *A.L. Abbott v. United States,* 200 Ct.Cl. 384, 389, *cert. denied,* 414 U.S. 1024, 94 S.Ct. 448, 38 L.Ed.2d 315 (1973) *reh'g denied,* 414 U.S. 1138, 94 S.Ct. 885, 38 L.Ed.2d 764 (1974). Plaintiff's entitlement to be advanced to the highest grade in which he served is proscribed by 10 U.S.C. § 3964. Plaintiff's analysis of the legislative history is neither persuasive nor even germane to the case now before the Court.

Plaintiff's argument primarily relies on the Warrant Officer Act of 1954, 249, 68 Stat. 157, 163, *repealed* by Act of August 10, 1956 (70A Stat. 641), which he now argues gives him the right to be retired with the highest retirement pay to which he may be entitled under any other law. Unfortunately for the plaintiff, this statute was repealed in 1956, many years before plaintiff's 1980 retirement.

Plaintiff's assertions that uniformity between warrant officers of the respective services regarding retirement rights is mandated by the Army and Air Force Vitalization and Retirement Equalization Act of

---

4.  Plaintiff relies on Section 202 of the Army and Air Force Vitalization and Retirement Equalization Act of 1948, c. 708, 62 Stat. 1081, 10 U.S.C. § 971b, *repealed by* 70A Stat. 641 (1956), reenacted and codified as 10 U.S.C. § 1331, Act of August 10, 1956, c. 1041, 70A Stat. 1, 102; Sections 14(d) & (f) of the Warrant Officer Act of 1954, c. 249, 68 Stat. 157, *repealed by* 70A Stat. 641, reenacted and *codified* as 10 U.S.C. § 1371 (1976); 10 U.S.C. § 277 (1976), and the Fifth Amendment to the Constitution.

5.  Section 531 of the Department of Defense Authorization Act of 1986, Pub.L. 99–145, 99 Stat. 633, finally gave Army chief warrant officers prospective official commissioned status. That statute is codified in 10 U.S.C. § 555(b) (1986). Nevertheless, Section 555(b) was not in force at the time plaintiff retired and, therefore, when this cause of action arose in September of 1981. The 1986 statute was not made retroactive by its terms and, therefore, does not apply to plaintiff in this case.

1948, and by the Warrant Officer Act, *supra*, are also unpersuasive. Plaintiff contends that Section 202 of the Equalization Act, when read in conjunction with Sections 14(d) and 14(f) of the Warrant Officer Act, allows for his retirement from the Army in the "highest grade he has satisfactorily served" after only twenty years of active service.[7] Once again plaintiff relies on provisions of statutes that have been repealed. See Act of August 10, 1956, 1041, 70A Stat. 641, which repealed the provisions cited by plaintiff of both the Warrant Officer Act and the Equalization Act.

While in force, however, Section 202 of the Equalization Act provided that "any officer" on the active list or of the reserve components who had previously completed 20 years of service, 10 of which as a commissioned officer, could retire at the higher commissioned officer retirement rate. Section 202, however, did not, specify by reference, warrant officers, but rather used the term "officer" generically. Plaintiff argues that the reference to "officers" in Section 202 includes warrant officers which was changed and limited to commissioned officers during the 1956 codification of Section 202 in 10 U.S.C. § 3911.[8] Plaintiff points to Section 203(c) of the Equalization Act for additional support.

Plaintiff also argues that Section 203(c) of the Equalization Act provides for warrant officers to receive the same retirement opportunities as regular commissioned officers. Plaintiff's argument is based upon a chronology of legislative history which is inappropriate to this Court's analysis in interpreting a statute that is clear on its face. As was noted above, for this case, 10 U.S.C. § 3964, which set out the years-of-service requirement for warrant officers who retired from the Army in 1980, is the controlling statute. The Equalization Act, which previously provided for retirement of officers in more than one service, does not override later provisions enacted by Congress to provide solely for retirement of warrant officers in the Army (10 U.S.C. §§ 1370–1371 (Supp. IV, 1980) and 10 U.S.C. § 1364 (1976), or to change a classification distinction, as Congress did in Section 112 of the Defense Officer Personnel Management Act, Pub.L. 96–513, 94 Stat. 2876. 10 U.S.C. § 1370, 1371).

The applicable 1980 statutory distinctions between warrant officers of the Army and Air Force and warrant officers of the Navy, Marines, and Coast Guard, pertaining to retirement from each of these services were Congressionally created and codified into different sections of the United States Code. In the Army and Air Force, warrant officers in 1980 received their warrants from the Secretary of the Army, and were not commissioned by the President of the United States. Warrant officers of the other services received commissions from the President. 10 U.S.C. § 555(b) (1976). The statutory package, defining the method of appointment, responsibilities and rights of an Army warrant officer is different from those pertaining to members of the other services.

In view of the codification of the Equalization Act and the Warrant Officer Act, there was no provision for retirement by Army personnel at a higher grade, without

7. Section 14 of the Warrant Officer Act provided in part that:
(d) A warrant officer who is retired under this section shall, as determined by the Secretary, be retired in the permanent warrant officer grade held on the day before the date of his retirement, or in any higher warrant officer grade in which he has satisfactorily served, as determined by the Secretary, on any full time duty under competent orders specifying that the period of such duty shall be for a period in excess of thirty days or for an indefinite period.
\* \* \* \* \* \*
(f) The provisions of this section or section 13 shall not prevent any warrant officer from electing to be placed on the retired list in the highest and with the highest retired pay to which he may be entitled under any other law. 68 Stat. 163, 164 (1954).

8. 10 U.S.C. § 3911 (1976) provides the following:
The Secretary of the Army may, upon the officer's request, retire a regular or reserve commissioned officer of the Army who has at least 20 years of service computed under section 3926 of this title, at least 10 years of which have been active service as a commissioned officer.

completing 30 years of service, or retirement at some other grade, without actually being at that grade on the date retirement occurs. Consequently, 10 U.S.C. § 3964 specifically provides the applicable rule for warrant officer retirement grade advancements in 1980, when plaintiff retired, and has been properly applied in this case.

Plaintiff argues that the Congressional distinction which provides for his retirement as a warrant officer (and not as a major) is "unfairly discriminatory" as compared to warrant officers of other services. Plaintiff relies upon 10 U.S.C. § 277.[9] Plaintiff suggests that 10 U.S.C. § 277 mandates that a retiring Army warrant officer, who leaves after twenty years of service, ten of which were commissioned, should be retired as a retiring commissioned officer of like service time. He claims that to do otherwise discriminates between regular and reserve officers in violation of 10 U.S.C. § 277. This argument, however, appears to be an attempt to deflect from the real issue in this case regarding the differing retirement rights of warrant officers and regular commissioned officers. 10 U.S.C. § 277 only addresses distinctions between the rights of regular and reserve officers, which are not at issue in this case.

Lastly, plaintiff attempts to assert a constitutional challenge under the equal protection clause of the Fifth Amendment. Plaintiff tries to establish that the differing rules governing retirement grade levels between Army warrant officers and warrant officers of other services with more favorable retirement rules is an illegal classification, violative of the Fifth Amendment equal protection right.

■ Without taking a position on the issue of this Court's jurisdiction to decide whether a statutory retirement scheme, such as is at issue in this case, violates the Fifth Amendment of the Constitution, the Court would note that plaintiff's claim in this regard is also without merit. When a classification scheme does not impermissibly interfere with a fundamental right or operate to the peculiar disadvantage of a suspect class, such as race or religion, a Court need not undertake strict judicial scrutiny of that classification. When application of the strict scrutiny standard is inappropriate, as would be the case here, the legislative scheme is presumed to be valid and should be sustained if the classification as drawn by the statutes is rationally related to a legitimate governmental interest. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976).[10]

The Court also notes that classification of persons for determining eligibility to receive benefits is not *per se* invalid and "inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line." *Mathews v. Diaz*, 426 U.S. 67, 83–84, 96 S.Ct. 1883, 1893, 48 L.Ed.2d 478 (1976). How to draw such classification lines for the receipt of benefits, however, is a legislative not a judicial, consideration. *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980).

In the past, the Supreme Court has held that a Congressionally enacted statute, requiring the registration for possible military service of men, but not women, did not violate the Fifth Amendment, *Rostker v. Goldberg*, 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981), and has held that statutory distinctions determining only certain reservists as eligible for a military retire-

---

9. Section 277 states:
   Laws applying to both Regulars and Reserves shall be administered without discrimination—
       (1) among Regulars;
       (2) among Reserves; and
       (3) between Regulars and Reserves.
   10 U.S.C. § 277 (1976).

10. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520

(1976), involved an equal protection challenge under the Fourteenth Amendment. However, it is well settled that the "[e]qual Protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment." *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976); and *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975). Thus, the application of the rationality analysis is appropriate herein.

ment pay program was not violative of Fifth Amendment equal protection guarantees. *Alexander v. Fioto,* 430 U.S. 634, 97 S.Ct. 1345, 51 L.Ed.2d 694 (1977). In *Alexander,* the court indicated that "[t]he statutory exclusion is unquestionably the product of a deliberate and rational choice which Congress had the constitutional power to make." *Id.* at 640, 97 S.Ct. at 1348. It is equally clear that the statutes which distinguished the retirement pay rights of warrant officers of the various services in force at the time of plaintiff's retirement were not in violation of the equal protection clause of the Fifth Amendment and plaintiff can state no claim to retirement pay based on this argument.

### Conclusion

Upon consideration of the oral arguments and written submissions offered by the parties, the plaintiff's motion for summary judgment is denied and the defendant's cross-motion for summary judgment is granted. The Court finds that in plaintiff's case, his retirement grade was properly set in accordance with 10 U.S.C. § 3964 (1976). In 1980, when plaintiff retired, warrant officers seeking to upgrade their retirement grade were required to have satisfactorily served on active duty for at least thirty years, a condition which plaintiff did not meet.

The Clerk is directed to enter judgment in accordance with the findings herein. The parties shall each bear their own costs.

IT IS SO ORDERED.