**Richard D. GLAZIER, Plaintiff-Appellant,**

v.

**Capt. James G. HACKEL, Company Commander, et al., Defendants-Appellees.**

**No. 26106.**

United States Court of Appeals, Ninth Circuit.

March 31, 1971.

William Samsel (argued), Donald A. Jelinek, Berkeley, Cal., for plaintiff-appellant.

Steven Kazan, Asst. U. S. Atty. (argued), James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for defendants-appellees.

Before HAMLIN, BROWNING, and WRIGHT, Circuit Judges.

BROWNING, Circuit Judge:

Pursuant to Army Regulation 600–200, Richard D. Glazier, an enlisted member of the United States Army, applied for classification as a conscientious objector to combatant training and service (Class I-A-O), and for assignment to noncombatant duty. The Department of the Army disapproved his application. Glazier then filed a petition for habeas corpus alleging that the Department had failed to comply with its own regulations and that its decision was arbitrary and without basis in fact. The district court dismissed the petition on the ground that "the reclassification of the plaintiff to the class sought will not accomplish his discharge, and therefore does not entitle him to any relief under habeas corpus." We reverse.[1]

As the government concedes, habeas corpus is the accepted vehicle for judicial review of a military depart-

---

[1] The government asserts that petitioner failed to serve process on the respondents. Yet an Assistant United States Attorney argued before the district court that the petition should be denied and before this court that the denial should be sustained. Under these circumstances we will review the judgment. See Ex Parte Endo, 323 U.S. 283, 285, 65 S.Ct. 208, 89 L.Ed. 243 (1944).

ment's administrative denial of a serviceman's application for classification as a conscientious objector to both combatant and noncombatant training and service (Class I-O), and for discharge. The watershed opinion is that of Judge Kaufman in Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968). The Supreme Court recently reviewed the merits of such an administrative determination by the Department of the Army in a habeas corpus proceeding in Negre v. Larsen, consolidated with Gillette v. United States, 91 S.Ct. 828 (1971). Cases from this court expressly or tacitly approving the use of habeas corpus for this purpose include Parisi v. Davidson, 435 F.2d 299 (1970); Zemke v. Larsen, 434 F.2d 1281 (1970); Johnson v. Laird, 435 F.2d 493, 496 (1970); Jarrett v. Resor, 426 F.2d 213, 217 n. 6 (1970); Quinn v. Laird, 421 F.2d 840 (1970); Sertic v. Laird, 418 F.2d 915 (1969); Negre v. Larsen, 418 F.2d 908 (1969); Krieger v. Terry, 413 F.2d 73 (1969); and Schwartz v. Franklin, 412 F.2d 736, 738–39 (1969).[2]

The government argues that the present case is distinguishable because Glazier did not claim conscientious objection to both combatant and noncombatant training and service (Class I-O) but only to combatant training and service (Class I-A-O), and because he did not seek discharge but only assignment to noncombatant duty. In United States ex rel. Tobias v. Laird, 413 F.2d 936 (1969), the Court of Appeals for the Fourth Circuit held that habeas corpus is equally appropriate for review of the administrative rejection of such a claim and we agree.

There are two possible arguments against this result.

I

The first, upon which the district court relied, is that habeas corpus is available only to obtain release from unlawful detention—and not, it is sometimes added, to test the conditions of lawful custody.

 Certainly the writ's great purpose is to test the lawfulness of restrictions upon personal freedom, and both the jurisdictional statute (28 U.S.C. § 2241) and the history of habeas corpus require that the petitioner be "in custody" when the application is filed. United States ex rel. Carafas v. La Vallee, 391 U.S. 234, 238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Peyton v. Rowe, 391 U.S. 54, 58–59, 88 S.Ct. 1549, 20 L. Ed.2d 426 (1968). The "custody" requirement is satisfied, however, by the restraints incident to military service. This is necessarily implicit in the cases cited above sustaining use of habeas corpus to challenge a military department's administrative rejection of a request for discharge as a Class I-O conscientious objector. See particularly Hammond v. Lenfest, supra, 398 F.2d at 712; Jarrett v. Resor, supra, 426 F.2d at 217 n. 6.

 It is clear from recent Supreme Court decisions that it is not a bar to habeas corpus that a ruling favorable to the petitioner will not result in his release, for, as the statute states, the ha-

---

2. Cases from other circuits include: Daost v. Laird, (D.C.Cir.) 434 F.2d 520; United States ex rel. Sheldon v. O'Malley, 420 F.2d 1344 (D.C.Cir. 1969); Silberberg v. Willis, 420 F.2d 662 (1st Cir. 1970); Bates v. Commander, 413 F.2d 475 (1st Cir. 1969); United States ex rel. Mankiewicz v. Ray, 399 F.2d 900 (2d Cir. 1968); Brown v. McNamara, 387 F.2d 150, 152 (3d Cir. 1967); United States ex rel. Lehmann v. Laird, 430 F.2d 96 (4th Cir. 1970); United States ex rel. Tobias v. Laird, 413 F.2d 936 (4th Cir. 1969); United States ex rel. Brooks v. Clifford, 409 F.2d 700, 705–06 (4th Cir. 1969); In re Tavlos, 429 F.2d 859 (5th Cir. 1970); United States ex rel. Healy v. Beatty, 424 F.2d 299 (5th Cir. 1970); Pitcher v. Laird, 421 F.2d 1272 (5th Cir. 1970); In re Kelly, 401 F.2d 211 (5th Cir. 1968); Packard v. Rollins, 422 F.2d 525 (8th Cir. 1970); Schultz v. Clifford, 417 F.2d 775, 776 (8th Cir. 1969); Helmick v. Laird, 437 F.2d 321 (5th Cir. Feb. 16, 1971); United States ex rel. Donham v. Resor, 436 F.2d 751 (2d Cir. Jan. 6, 1971); United States ex rel. Conrad v. Hoffman, 435 F.2d 1273 (7th Cir. 1970); Cohen v. Laird, 439 F.2d 866 (4th Cir. Mar. 19, 1971).

beas court is broadly empowered to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. *See* United States ex rel. Carafas v. La Vallee, *supra,* 391 U.S. at 239, 88 S.Ct. 1556; Peyton v. Rowe, *supra,* 391 U.S. at 66–67, 88 S.Ct. 1549; Dowd v. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215 (1951). In Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953), discussed in some detail below, the Court considered the merits of a habeas corpus petitioner's claim that he was entitled to be placed in a particular classification or category for military duty purposes even though he requested discharge only in a conditional sense—only if the Army did not assign him to duties within his proper classification. Thus *Orloff* is authority that habeas corpus is appropriate even though the petitioner does not seek, nor would a favorable decision grant, release from all "custody." Similarly, in Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), and Ex Parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941), the Court examined prison regulations on their merits and held them invalid in habeas proceedings initiated by prisoners, although the regulations' invalidity did not result in the prisoners' discharge. *See also* Developments in the Law, Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1079–87, 1238–52 (1970); cf. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

## II

The government's second argument is that the Army's decision denying Glazier's application for classification as a conscientious objector to combatant training and service (Class I-A-O) was a decision concerning assignment of military personnel to duties within the service and that, without regard to the form of the judicial proceedings, the Supreme Court held in Orloff v. Willoughby, *supra,* that such decisions are not reviewable by the courts.

Drawing the line between reviewable and nonreviewable agency action in this area requires an accommodation of the individual's right to compel government to adhere to the rule of law in its dealings with him and the need of the military establishment for a large measure of autonomy in the control of daily military operations, particularly in the procurement and management of military manpower. Sherman, Judicial Review of Military Determinations and the Exhaustion of Remedies Requirement, 55 Va.L.Rev. 483, 495, 521–22, 527–28 (1969); Comment, God, the Army, and Judicial Review, 56 Calif.L.Rev. 379, 444–45 (1968). We agree with the government that the side of the line upon which this case falls can be determined with reasonable assurance from the decision in Orloff v. Willoughby, *supra.* We differ with the government, however, as to which side of the line that is.

Dr. Orloff filed a petition for habeas corpus requesting discharge from the Army unless he was assigned duties as a doctor and commissioned as an officer, as required, he contended, by the Doctors Draft Act, 50 U.S.C. App. § 454(i) (1) (A), under which he was inducted. In the lower courts the government argued "that under the statute doctors could be drafted and used for any purpose the Army saw fit, that duty assignment for such inductees was a matter of military discretion." 345 U.S. at 87, 73 S. Ct. at 537. When the case reached the Supreme Court, the government conceded that Dr. Orloff was entitled to be assigned to duties as a "medical specialist" but contended that the particular duties to which he had been assigned, those of a laboratory technician, fell within that category.

Despite the government's concession, the Supreme Court reviewed the merits of the issue of statutory construction and held that the Army *was* obligated to classify Dr. Orloff within the "medical specialist" category. 345 U.S. at 87–88, 73 S.Ct. 534. The Court also made a sufficient examination of the facts to satis-

fy itself that the laboratory technician duties to which Dr. Orloff had been assigned fell within the "medical specialist" category. 345 U.S. at 92, 73 S.Ct. 534.

The Court then went on to state: "while the duties *must be within this category,* a large area of discretion as to *particular duties* must be left to commanding officers." 345 U.S. at 92, 73 S.Ct. at 539 (emphasis added). The Court pointed out that every doctor in the Army could not be allowed to choose his own duties within the medical specialist category and that selecting the particular assignment in which Dr. Orloff's skills would best serve the Army's needs required the resolution of kinds of issues that courts were neither competent nor authorized to decide. 345 U.S. at 92–93, 73 S.Ct. 534.[3]

■■ The analogies to be drawn to the present case seem reasonably clear. Under Department of Defense regulations, the Army was required to classify Glazier as a conscientious objector to combatant training and service if he met the standards for that classification, and the courts may review the Army's refusal to do so by habeas corpus.[4] On the other hand, the courts may not review Glazier's particular duty assignment within the noncombatant category—nor have

they been asked to do so, for no such assignment had been made.

This analysis is supported by the structure of the regulations and by the rationale of the *Orloff* case.

The Department of Defense has undertaken by appropriate directive to respect bona fide conscientious objection to participation in war in any form.[5] To implement this policy, the Department has adopted both the criteria for exemption set forth in section 6(j) of the Military Selective Service Act of 1967, 50 U.S.C. App. § 456(j) (1964 ed., Supp. IV),[6] and the classification system employed by the Selective Service System.[7] *See* Gillette v. United States, *supra,* 91 S.Ct. 828. Accordingly, individuals who are "conscientiously opposed to participation in both combatant and noncombatant training and service" are to be placed in Class I-O,[8] while those who are "conscientiously opposed to combatant training and service" are to be placed in Class I-A-O.[9]

The Department directive further provides that after a determination has been made on the merits of the application and an applicant has been classified I-O, he "will normally be discharged";[10] or if he has been classified I-A-O, he will "be reassigned to non-combatant training and duties as indicated in" the directive.[11] In general, persons classified

---

3. The Court also held, on the merits, that the President had acted within his statutory powers and with cause in denying Dr. Orloff an officer's commission. 345 U.S. at 88–92, 73 S.Ct. 534.

4. Although the duty here was imposed by regulation, rather than by statute, as in *Orloff,* it is clear that the military departments must follow their own regulations. Nixon v. Secretary of Navy, 422 F.2d 934, 937 (2d Cir. 1970); Schatten v. United States, 419 F.2d 187, 191–92 (6th Cir. 1969); Smith v. Resor, 406 F.2d 141, 145–46 (2d Cir. 1969); Dunmar v. Ailes, 121 U.S.App.D.C. 45, 348 F.2d 51, 53 (1965); Roberts v. Vance, 119 U.S.App.D.C. 367, 343 F.2d 236, 239 (1964), and that the Department of Defense and the Army are bound by their regulations dealing with conscientious objectors. United States ex rel. Donham

v. Resor, 436 F.2d 751 (2d Cir. Jan. 6, 1971); Kimball v. Commandant, 423 F.2d 88, 90 (9th Cir. 1970); United States ex rel. Tobias v. Laird, 413 F.2d 936 (4th Cir. 1969); United States ex rel. Brooks v. Clifford, 409 F.2d 700, 706 (4th Cir. 1969); Hammond v. Lenfest, 398 F.2d 705, 715 (2d Cir. 1968). *Cf.* Smith v. Resor, 406 F.2d 141, 145–146 (2d Cir. 1969).

5. Department of Defense Directive No. 1300.6, para. IV B (May 10, 1968).

6. *Ibid.,* para. V A.

7. *Ibid.,* para. IV B.3.b.

8. 32 C.F.R. § 1622.14.

9. 32 C.F.R. § 1622.11.

10. DoD 1300.6, para. VI C.1.

11. *Ibid.,* para. VI C.3.

I-A-O "may be transferred to the Hospital Corps, or Medical Department, for further training, provided they meet the requirements therefor. * * * Any person who does not meet the requirements for this training, who fails to complete the proscribed course of instruction or who otherwise cannot be assigned to this duty, will be employed in other non-combatant duties if retained in the Service."[12]

The sharp distinction drawn by the Department directive between the decision to classify a serviceman I-A-O and the decision to assign him to particular duties is reflected also in the Army regulations issued pursuant to the directive. Not surprisingly, the regulations provide for the use of distinct channels, procedure, and standards in arriving at these two wholly different decisions.[13]

Like the basic classification in *Orloff*, the decision to grant or deny an individual conscientious objector status does not, in itself, require the exercise of military expertise. Administrative determinations of this very question, under exactly the same standards, are made daily by the Selective Service System and are reviewed routinely by the courts. On the other hand, "in contrast to the yea or nay character of entitlement to the conscientious objection exemption," United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 374 (2d Cir. 1968), the choice of a particular noncombatant duty assignment for an individual soldier in the I-A-O classification involves precisely that kind of discretionary judgment about day-to-day military needs and the individual's capacity to fill them that *Orloff* warns are within the exclusive province of the military authorities and outside judicial competence.

So far as the factors that should determine reviewability of an administrative decision of a military department are concerned, there is no difference between a decision to deny a I-O classification and a decision to deny a I-A-O classification. Ordinarily both require the application of the legal standard for conscientious objection and the resolution of a single, nonmilitary, factual issue—whether the individual's professed beliefs are sincerely held. Accordingly, all the authorities cited earlier for the proposition that a military department's rejection of an application for I-O classification is subject to judicial review (see note 2 and related text) sustain the propriety of judicial review of the denial of a I-A-O classification. Although in those cases the relief requested was discharge from the service, the courts were not reviewing a military decision refusing to discharge a serviceman but rather a decision refusing to grant him conscientious objector status. *See* United States ex rel. Tobias v. Laird, *supra*, 413 F.2d at 940. The propriety of judicial review of this decision cannot logically depend upon whether a discharge or a duty assignment order would have followed had the applicant's request for conscientious objector status been granted.

One final point. The Defense Department directive does provide that "bona fide conscientious objection * * * by persons who are members of the Armed Forces will be recognized *to the extent practicable and equitable*."[14] The italicized reservation of discretion refers not to the classification decision but rather to the discharge or assignment to noncombatant duties that would normally follow it. As we have noted, *Orloff* indicates that an order dealing with duty assignments is reviewable to the extent necessary to assure that a purportedly favorable classification decision was not sham. The italicized provision recognizes, however, that military exigencies might require that discharge

---

12. *Ibid.*, para. VI D.

13. The classification decision is governed by paragraph 2–12 of A.R. 600–200; the utilization of personnel classified I–A–O is controlled by paragraph 3–7.

14. DoD 1300.6, para. IV B. (emphasis added)

or assignment to noncombatant duty be withheld despite a favorable classification decision. If reliance upon such considerations were asserted, judicial review might well be barred. No such issue is presented here, however. Only the classification decision is challenged, and there is no suggestion that this decision rested in any part upon military exigencies, even assuming that it might. *Cf.* Hammond v. Lenfest, *supra*, 398 F.2d at 715–716; United States ex rel. Brooks v. Clifford, 409 F.2d 700, 706 (4th Cir. 1969).

Reversed and remanded for further proceedings.