Dwight A. HELTON, Plaintiff,

v.

UNITED STATES of America, the United States Department of the Army, and Major General Clarence E. McKnight, Jr., Defendants.

Civ. A. No. CV180–206.

United States District Court,
S. D. Georgia,
Augusta Division.

Feb. 19, 1982.

Daniel J. Craig, of Harrison, Jolles & Craig, APC, Augusta, Ga., for plaintiff.

Edmund A. Booth, Jr., Asst. U. S. Atty., Augusta, Ga., for defendants.

## ORDER

BOWEN, District Judge.

In this action, the Court is once again presented with a challenge by a member of the armed forces to certain military regulations and actions. Before reaching the merits of the case, the Court, by this order, resolves certain threshold issues raised by defendants. Following a recitation of undisputed facts as gathered from the record,

in the first part of the order, consideration is then given to subject matter jurisdiction in the context of the sovereign immunity doctrine. Having established jurisdiction over some of plaintiff's claims, the Court next determines the justiciability of the claims. Finally, after reviewing plaintiff's action in the context of a Rule 12(b)(6) motion, the Court delineates the specific issues for ultimate determination following an evidentiary hearing.

Plaintiff, Dwight A. Helton, attended the United States Military Academy, West Point, New York, from 1970 to 1974. Upon graduation, plaintiff accepted a commission as a Second Lieutenant, Regular Army, and incurred a five-year active duty obligation. At the present time, plaintiff is a Captain in the United States Army assigned to Fort Gordon, Georgia.

Prior to his graduation from West Point in 1974, Captain Helton competed for a National Science Foundation Scholarship and was awarded a fellowship for post-graduate study, under the provisions of Army Regulation 621–7. On July 24, 1974, plaintiff was granted permission to accept his scholarship immediately as an exception to the normal practice that required three years of active duty before further education. Yet, Captain Helton was unable to take advantage of this exception and apply for post-graduate study commencing in the fall semester of 1974. In lieu thereof, plaintiff requested reinstatement of his fellowship for the 1975–1976 school year and sought a waiver of the normal stabilization policy. Subsequently, the requested waiver was granted, and plaintiff was informed to fulfill the other requirements for acceptance of a fellowship outlined in AR 621–7 in order to attend graduate school in September, 1975.

Thereafter, by letter dated January 1, 1975, plaintiff advised the Army that he would comply with the requirements of AR 621–7 ¶ 7e and also inquired about the possible graduate schools he could attend. Among other things, AR 621–7 ¶ 7e requires a signed statement by the applicant to the effect that he will remain on active duty for a period at least three times longer than the period of training. By response letter dated January 27, 1975, the Army informed Captain Helton that he could attend any accredited university in the United States, with the specific exception of some thirteen major universities. Subsequently, by letter on March 24, 1979, plaintiff informed the Army of his acceptance for graduate study at the Georgia Institute of Technology. In accordance with AR 621–7 ¶ 7e, he enclosed a photocopy of his letter of acceptance together with the following signed statement: "I Dwight A. Helton understand that acceptance of a National Science Foundation Fellowship under the provision of AR 621–7, means that I will be required to remain on active duty for a period at least three times longer than the period of graduate schooling."

Upon receipt of this last letter, the Army wrote back to Captain Helton requesting the other items required by AR 621–7 ¶ 7e, specifically an approved application to compete, documentary evidence of the award, the inclusive dates of attendance at graduate school and an initial financial statement. In response to this letter and in reference to a telephone conversation with a Major Neal J. Senkus on May 22, 1975, plaintiff, on May 27, 1975, wrote in part as follows:

First of all, I would like to thank you very much for giving me a clearer understanding of what I had to do in order to comply with acceptance procedure for my fellowship. I am sending the remaining requirements for acceptance of my fellowship, as specified by AR 621–7.

On July 14, 1975, orders were issued reassigning plaintiff to the Student Detachment, Fort Benjamin Harrison, Indiana, stationed at the Georgia Institute of Technology, Atlanta, Georgia, to pursue a MS degree in economics. The special instructions provided that plaintiff was to attend school in a duty status with full pay allowance and that plaintiff could not accept both a stipend under the fellowship and military allowances.

Pursuant to the above-described "agreement" with the Army, Captain Helton attended the Georgia Institute of Technology from August 9, 1975, until September 15, 1977. Following graduation, plaintiff served approximately two years in Italy and was reassigned to Fort Gordon, Georgia, beginning October 9, 1979. Shortly after returning to Fort Gordon, plaintiff attended a four-month long Signal Officer Advanced Course, completing the course on April 3, 1980. According to the Army, Captain Helton, by attending the Signal Officer Advanced Course and by completing graduate studies at Georgia Tech, incurred a combined service obligation extending until May 3, 1985.

In May, 1980, plaintiff, through his attorney, petitioned the Army Board for the Correction of Military Records [ABCMR] for a reduction of his service obligation. Captain Helton stated his complaint with his present service obligation as follows:

Prior to acceptance of a National Science Foundation Scholarship in 1975, the Army, through its Education Training Officer, Major Senkus, represented that, though the scholarship was governed by the provisions of AR 621–7, requiring active duty for three times longer than the period of training, I would only be required to serve under the requirements of AR 621–1, limiting the active duty requirement to a maximum of four years.

Upon review of plaintiff's application as well as the pertinent statutes and regulations, the ABCMR denied the request without a formal hearing, finding insufficient "relevant evidence to demonstrate the existence of probable material error or injustice to warrant a formal hearing." In its memorandum of decision, the Board commented that the payback obligation under AR 621–7 is statutorily mandated and that "there appears to be no basis for reducing the ... obligation period of service by two years because of the difference in the requirements of AR 621–1 and AR 621–7."

After notice of the ABCMR decision, plaintiff brought this action alleging *inter alia* : (1) defendants made certain represen-

tations concerning the active duty obligation incurred by accepting a fellowship for the National Science Foundation; specifically, it was represented that the payback obligation would not exceed the AR 621–1 obligation; (2) plaintiff relied upon these representations when he accepted the National Science Foundation Scholarship for attendance at graduate school; and (3) upon graduation, the Army failed and refused to assign plaintiff for duty in operations research in accordance with his fellowship training and agreement with the Army. As a result of the foregoing, plaintiff avers that the "enlistment agreement" between the parties has been breached and that plaintiff has been denied due process of law under the fifth amendment to the Constitution.

Plaintiff seeks relief in four counts. Count I demands a writ of mandamus ordering defendants to assign plaintiff to duty in accordance with his special training and to provide plaintiff with a computation of his active duty obligation. Count II petitions for a writ of habeas corpus ordering plaintiff's release from the Department of the Army. Count III seeks injunctive relief preventing the enforcement of the disputed "additional active duty obligation," or, in the alternative, preventing the enforcement of the service agreement for any period. Finally, Count IV seeks rescission of the "reenlistment contract."

The case is presently before the Court on defendants' motion to dismiss, or, in the alternative, for summary judgment. The motion is premised on three grounds: (1) the Court lacks subject matter jurisdiction; (2) the claim for a particular duty assignment is neither justiciable nor reviewable; and (3) the complaint fails to state a claim upon which relief can be granted.

I

JURISDICTION

For purposes of analyzing defendants' assault on the Court's jurisdiction, it is useful to first separate plaintiff's claims for relief into three categories: (1) writ of manda-

mus; (2) equitable relief in the nature of a permanent injunction and rescission; and (3) writ of habeas corpus. With respect to the first and second category, defendants raise the shield of sovereign immunity and contend that no statutory waiver of the immunity bar is apposite. With respect to the petition for a writ of habeas corpus, defendants argue that there is no basis for the Court's assumption of jurisdiction within the purview of 28 U.S.C. § 2241(c).

■ The framework for the Court's review of these two issues is contingent upon the nature of the jurisdictional attack. Ordinarily, a Rule 12(b)(1) motion to dismiss for want of subject matter jurisdiction may take two forms: (1) a facial attack on the complaint, in which the court must consider the allegations as true and determine whether a sufficient basis for subject matter jurisdiction has been alleged; and (2) a factual attack on the subject matter jurisdiction of the court, in which the presumption of truthfulness ends, matters beyond the pleadings are considered, and factual determinations are made pertaining to jurisdiction. *Williamson v. Tucker*, 645 F.2d 404, 412–414 (5th Cir. 1981); *see Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981). Thus, as summarized by the *Williamson* Court, the district court may dismiss for lack of subject matter jurisdiction on one of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." 645 F.2d at 413.

■ When the complaint alone is the ground for dismissal, the Court must accept plaintiff's averments at face value, unless transparently insubstantial or patently frivolous, and not resolve the merits of the case under the guise of deciding the jurisdictional issue. *See Williamson v. Tucker*, 645 F.2d at 412; *Carter v. Seamans*, 411 F.2d 767, 770 (5th Cir.), *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1969). Here, the Court will consider the complaint supplemented by the above-stated undisputed facts as gleaned from the record.

Hence, unless the relevant averments in plaintiff's complaint are controverted by the undisputed facts in the case, they will be accepted as true in resolving the jurisdictional questions at hand.

A. *Sovereign Immunity*

■ It is well settled that " '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *United States v. Mitchell*, 445 U.S. 535, 538 [100 S.Ct. 1349, 1352, 63 L.Ed.2d 607] (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 [61 S.Ct. 767, 769, 85 L.Ed. 1058] (1941)); *see Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1156 (5th Cir. 1981); *Stanton v. United States*, 434 F.2d 1273, 1275 (5th Cir. 1970). Accordingly, any action against the United States for either legal or equitable relief is foreclosed unless the United States has waived its immunity. *See generally* 1 Moore's Federal Practice ¶ 0.65[2.—1]. Of course, prefatory to an invocation of the immunity doctrine as a jurisdictional bar to suit is a determination that the action is indeed against the sovereign. If it is not, then the immunity issue becomes moot; if it is, then the necessary subsequent inquiry is whether a statutory exception to the immunity doctrine exists which would confer federal court jurisdiction over plaintiff's claim and render the United States amenable to suit.

■ In this case, the named defendants are the United States, the United States Department of the Army and Major General Clarence E. McKnight, Jr. While somewhat tautologous, it is established that an action against the United States *eo nomine* is perforce a suit against the sovereign within the proscriptive ambit of the immunity doctrine. *See United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Similarly, it is recognized that the Department of the Army, as a governmental entity not statutorily authorized to be sued in its own name, is immune from suit. *See Gnotta v. United*

*States,* 415 F.2d 1271, 1277 (8th Cir. 1969), *cert. denied,* 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115; *Fioto v. United States Department of the Army,* 409 F.Supp. 831, 832 n.2 (E.D.N.Y.1976), *rev'd on other grounds,* 430 U.S. 634, 97 S.Ct. 1345, 51 L.Ed.2d 694 (1977). The amenability *vel non* of defendant McKnight to federal court jurisdiction is not as readily resolved, however; such a determination raises a varied subset of complex issues within the amorphous doctrine of sovereign immunity. *See generally* 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3655 (1976).

■ As a general rule, an action seeking specific relief against an officer of the federal government in his official capacity is considered a suit against the sovereign. *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963); *see Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Yet, before imbuing a federal official with a derivative cloak of sovereign immunity, the Court must scrutinize the facts of the case to determine whether "by obtaining relief against the officer, relief will not, in effect, be obtained against the sovereign." *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. at 688, 69 S.Ct. at 1460; *see* 14 C. Wright, A. Miller & E. Cooper, *supra* § 3655, at 175–76. If, upon application of the pertinent criteria, the Court finds that the specific relief sought would in actuality be obtained against the sovereign, then, absent statutory consent to suit, the action against the public official may not be maintained.

■ The Supreme Court has established certain benchmarks to guide federal courts in resolving whether a claim for relief, nominally against an official, is in effect against the United States. Hence, if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947), or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act," *Larson v. Domestic & Foreign Commerce*

*Corp.,* 337 U.S. at 704, 69 S.Ct. at 1468 or if the decree sought "would operate against the sovereign," *Hawaii v. Gordon,* 373 U.S. at 58, 83 S.Ct. at 1053, then the action is treated as one against the United States. *See Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); *Gardner v. Harris,* 391 F.2d 885 (5th Cir. 1968); *Simons v. Vinson,* 394 F.2d 732 (5th Cir.), *cert. denied,* 393 U.S. 968, 89 S.Ct. 398, 21 L.Ed.2d 379 (1968).

Here, the specific relief prayed against defendant McKnight seeks to compel or restrain certain of his actions performed in the course of his official capacity. Since, in carrying out the duties of his office, defendant McKnight, is an agent of the United States, any judicial decree compelling him to act or restraining him from acting, is concomitantly a decree against the sovereign. *See Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. at 688, 69 S.Ct. at 1460. Accordingly, the immunity doctrine, unless waived, or, in the case of a public official, abrogated by judicial exception as discussed *infra,* interposes a barrier to federal court jurisdiction over plaintiff's action against defendant McKnight.

■ The courts have abrogated the shared immunity of a federal officer in two situations: (1) where the officer's action is beyond his statutory powers, or (2) where the officer's action is within his statutory powers, but those powers themselves, or the manner in which they are exercised, are constitutionally void. *Carter v. Seamans,* 411 F.2d at 770; *see Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. at 689–90, 69 S.Ct. at 1461–62; *Neal v. Secretary of the Navy,* 472 F.Supp. 763, 770–71 (E.D. Pa.1979), *rev'd on other grounds,* 639 F.2d 1029 (3d Cir. 1981). Of course, the action of an officer beyond his delegated authority is not within the realm of the sovereign's business and thus the officer is subject to federal court jurisdiction as any other individual. *See Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. at 689–90, 69 S.Ct. at 1461–62. Similarly, if the officer's action, or the statutory authority for his action, is unconstitutional, such action is

invalid *ab initio* and is not within the power of the sovereign to sanction or to delegate. *Id.* at 690, 69 S.Ct. at 1461. In both instances, i.e., action *ultra vires* or unconstitutional, suit for specific relief may be maintained against the public official as an individual. *See* 14 C. Wright, A. Miller & E. Cooper, *supra* § 3655, at 184–187.

■ While plaintiff, in his response brief, seeks to invoke these judicially created exceptions to circumvent the asserted immunity defense, the Court has difficulty in discerning the applicability of the exceptions to the named party defendants. Plaintiff has cited no authority that the exceptions pertain to the United States or one of its agencies sued *eo nomine*. The only public official named as a party defendant is Major General McKnight, plaintiff's present commanding officer. A review of the complaint reveals no allegation that actions of defendant McKnight are *ultra vires*, unconstitutional or taken pursuant to an unconstitutional grant of authority. Furthermore, even assuming that the Secretary of the Army or some other public official was named as a defendant, the Court finds no basis for applying the exceptions to the immunity doctrine carved out by the judiciary.[1]

1. Plaintiff avers that defendants made certain representations to him prior to his acceptance of the fellowship. Specifically, plaintiff claims he was advised that his payback obligation would not exceed the AR 621–1 obligation rather than AR 621–7 obligation. Moreover, plaintiff alleges that the different service obligations imposed under AR 621–1 and AR 621–7 violate the due process clause of the fifth amendment, in that "[t]the variance in such obligations bears no reasonable relation to the objectives for which the ... active duty obligation was designed.

Regulation 621–7 was promulgated pursuant to 10 U.S.C. § 2603, which provides in pertinent part:

Each member of the Armed Forces who accepts a fellowship, scholarship, or grant ... shall, before he is permitted to undertake the education or training contemplated by that fellowship, scholarship, or grant, agree in writing that, after he completes the education or training, he will serve on active duty of a period at least three times the length of the period of the education or training.

In accordance with this statutory mandate, paragraph 10(a) of AR 621–7 states: "Personnel [accepting a scholarship, fellowship or grant] must agree, in writing, to remain on active duty upon completion of schooling, for a period at least three times longer than the period of training."

Regulation 621–1 generally pertains to the training of military personnel at civilian institutions and implements the statutory provision for such training prescribed in 10 U.S.C. § 4301. Chapter 4, paragraph 4.4 of AR 621–1 specifies the general service obligation for officers selected for fully funded training exceeding twenty weeks as follows:

All [such] officers ... will be required to remain on active duty 3 years for each year of schooling or fraction thereof, subsequent to the completion of such schooling or withdrawal from the program, unless sooner relieved for the convenience of the government.

Obligated tour of active duty service for training under this regulation will not in any event be more than 4 years.

Chapter 7, paragraph 7–3(e) authorizes USMA cadets, designated as top five percent, to compete for and accept scholarships, fellowships or grants under the provisions of AR 621–7. The service obligation for all officers authorized to accept fellowships, scholarships, or grants under the provisions of AR 621–7 is three times the period of schooling. Regulation 350–100 makes this clear:

The obligation incurred [under AR 621–7] is imposed by statute as three times the period of schooling and may not be decreased by Army regulations. The time will be measured in days.

AR 350–100 ¶ 2(b)(3). AR 621–7 does not contain a four-year ceiling on the pay-back obligation as set forth in AR 621–1 ¶ 4.4, *supra*.

It is plaintiff's contention that, despite his acceptance of a fellowship pursuant to 10 U.S.C. § 2603 and AR 621–7, defendants represented that his service obligation would be calculated under AR 621–1. On review of the contentions of the parties, it appears that Major Neal J. Senkus, an Education Training Officer, allegedly made the representation. Assuming such a representation was made, and assuming Major Senkus or the Secretary of the Army was named as a party defendant, the Court finds no allegation that said officers acted beyond the limitations of their delegated authority. Similarly, there is no allegation that said officers acted *ultra vires* with respect to plaintiff's duty assignment. Thus, while the averments in the complaint may, if proved, establish a wrong to the plaintiff, they do "not establish that the officer, in committing that wrong, [was] not exercising the powers delegated to him by the sovereign." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. at 693, 69 S.Ct. at 1463; *see id.* at 690, 69 S.Ct. at 1461 ("A claim of error in the exercise, of [the officer's powers] is ... not sufficient [to annul him immunity].").

*28 U.S.C. § 1346(a)*

██ Since plaintiff's action is in essence one against the sovereign, it may be maintained only if the United States has consented to suit. As the basis for federal subject matter jurisdiction over his claim, plaintiff cites the Tucker Act. 28 U.S.C. § 1346(a). It is well settled, however, that the jurisdictional scope of the Tucker Act is limited to actions against the United States seeking monetary damages; it does not confer jurisdiction on the district courts to award equitable relief. *See Lee v. Thornton*, 420 U.S. 139, 140, 95 S.Ct. 853, 854, 43 L.Ed.2d 85 (1975); *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir.), *rehearing en banc denied*, 613 F.2d 314 (5th Cir. 1980). Thus, since plaintiff's complaint seeks only equitable relief, the Tucker Act is inapposite.

*28 U.S.C. § 1361*

 While plaintiff's statement of jurisdiction is ineffectual, the Court may nevertheless sustain jurisdiction "when an examination of the entire complaint reveals a proper basis for assuming jurisdiction other than the one that has been improperly asserted." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1206, at 77 (1969). Turning, then, to the specific allegations of plaintiff's complaint attention is first brought to Count I in which plaintiff seeks a writ of mandamus. The pertinent inquiry framed by the allegations of Count I is whether the Mandamus and Venue Act, 28 U.S.C. § 1361, provides a basis for subject matter jurisdiction as well as a waiver of sovereign immunity.

Section 1361 provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

While the statute specifically confers subject matter jurisdiction over actions in the nature of mandamus, it is also construed as a waiver of sovereign immunity. *Huffstutler v. Bergland*, 607 F.2d 1090, 1092 (5th Cir. 1979) (*per curiam*). Mandamus has been termed "an extraordinary remedy, . . . reserved for extraordinary situations." *Winningham v. United States Department of Housing and Urban Development*, 512 F.2d 617, 620 (5th Cir. 1975); *see Carter v. Seamans*, 411 F.2d at 773. As a general matter, three elements must be present before mandamus can issue: (1) the plaintiff must have a clear right to the relief; (2) the defendant must have a clear duty to act; and (3) no other adequate remedy must be available. *Jones v. Alexander*, 609 F.2d at 781.

Plaintiff's constitutional claim is set forth in paragraph 8 of his complaint as follows:

[T]he Defendants have denied the Plaintiff of due process of law according to Amendment V of the United States Constitution, in that the Defendants seek to impose an active duty obligation of three days for every day during which the Plaintiff studied under said fellowship, whereas the active duty obligation imposed upon United States Army Fellowship is only two days for each day of study and is governed by the provisions of Army Regulation 621–1. The variance in such obligations bears no reasonable relation to the objectives for which the said active duty obligation was designed and the conflict in said obligations works an unjustified hardship on the Plaintiff.

Apparently, plaintiff contends that certain unspecified public officials, in implementing the pay-back obligation period specified in AR 621–7, took action pursuant to an unconstitutional grant of authority.

Such allegations in themselves, however, do not necessarily invoke an exception to a public official's immunity. The applicability of the exception is ultimately dependent upon the nature of the equitable relief sought. As the Supreme Court noted:

[A] suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, *if the relief requested can not be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign*. . . .

*Larson v. Domestic & Foreign Domestic Corp.*, 337 U.S. at 691, 69 S.Ct. at 1462 (emphasis added). Here, the specific equitable relief sought by plaintiff would, if granted, require affirmative action by the sovereign (i.e., duty reassignment or discharge) and not merely the cessation of conduct.

The specific relief sought by plaintiff is a writ of mandamus ordering defendants to assign plaintiff to a certain duty as well as to provide plaintiff with a computation of his active duty obligation. Upon review of the complaint, supplemented by the uncontroverted facts in the record, the Court is unable to find either that plaintiff has a clear right to such relief or that the defendants have a clear duty to act.

▪ With respect to the duty assignment for military personnel who have completed a fellowship, scholarship or grant pursuant to AR 621–7, paragraph 14 of that regulation provides that "assignment ... will be made ... in order to apply the benefits of the training to that assignment." There is no regulatory requirement that an officer, upon completion of a certain fellowship, be assigned a specific duty in direct correlation to the subject matter of the fellowship. Instead, the regulation leaves it to the specialized expertise of the military to determine the appropriate duty assignment which will utilize the benefits of an officer's training.[2] Hence, the regulatory scheme imposes no clear duty upon defendants to provide plaintiff with a particular active duty assignment. Accordingly, plaintiff's claim is not cognizable under the jurisdictional grant of section 1361.

▪ A similar conclusion follows for plaintiff's demand for a computation of his remaining service obligation. Assuming this claim is not moot, in view of the authoritative computation already provided plaintiff by the ABCMR, the Court finds no clear duty upon defendants to afford plaintiff the type of relief sought. Plaintiff has cited no statute or regulation requiring such a computation. Moreover, while AR 350–100 ¶ (h) specifies the means by which the active duty service obligations for a given program shall be brought to the attention of an officer, it appears from the record that defendants fully complied with this regulation. Thus, it is manifest from the foregoing that the Mandamus and Ven-

ue Act does not provide a proper ground for jurisdiction over plaintiff's computation claim.

### 5 U.S.C. § 702

▪ 28 U.S.C. § 1331(a) provides in pertinent part that federal district courts have subject matter jurisdiction over actions against the United States, its agencies or its officers acting in their official capacities, which arise under the Constitution, laws or treaties of the United States, without regard to amount in controversy. While this statute confers subject matter jurisdiction over the defined actions against the United States, it is not in itself a waiver of sovereign immunity. See Beale v. Blount, 461 F.2d 1133, 1138 (5th Cir. 1972).

▪ Yet a companion waiver of the immunity barrier is found in the Administrative Procedure Act [APA], 5 U.S.C. § 702, which abrogates "sovereign immunity for actions against federal government agencies, seeking nonmonetary relief, if the agency conduct is otherwise subject to judicial review." Sheehan v. Army and Air Force Exchange Service, 619 F.2d 1132, 1139 (5th Cir. 1980), cert. granted, —— U.S. ——, 102 S.Ct. 88, 70 L.Ed.2d 81 (1981); see Rowe v. United States, 633 F.2d 799, 801 (9th Cir. 1980), cert. denied, 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981); Beller v. Middendorf, 632 F.2d 788, 796–797 (9th Cir. 1980), cert. denied, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981); Jaffee v. United States, 592 F.2d 712 (3d Cir.), cert. denied, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979). Thus, in suits against the United States seeking equitable relief, federal courts may review "agency action" pursuant to the general grant of subject matter jurisdiction under the federal question statute. See generally 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3655 (Supp.1980). As gleaned from the cases, see, e.g., Neal v. Secretary of the Navy, 472 F.Supp. at 773–775, the

---

**2.** Even assuming that mandamus jurisdiction would lie, courts have well established that specific assignments to military duty are not

properly subject to judicial review. See part II, infra.

inquiry before the Court in determining the applicability of the section 702 waiver in suits for "nonstatutory" review of agency action under section 1331(a) is threefold: (1) whether the type of relief sought is equitable, i.e., non-monetary, and thus within the ambit of section 702; (2) whether the governmental acts which gave rise to plaintiff's complaint are "agency action" within the purview of section 702; and (3) whether, if the section 702 immunity waiver applies, does plaintiff's action indeed "arise" under the Constitution or laws of the United States within the purview of section 1331(a).

Clearly, the relief sought by plaintiff is equitable, in the sense that it is for other than monetary damages. Thus, the threshold requirement under section 702 is met. With respect to the second of the above-enumerated inquiries, plaintiff is essentially seeking review of two types of agency action: (1) enforcement of the section 621–7 pay-back obligation; and (2) the active duty assignment made for plaintiff. Both types of actions are colorably "agency action" so as to come within the scope of judicial review sanctioned by section 702.[3] *See Jaffee v. United States*, 592 F.2d at 719 ("[T]he United States Army is an 'agency' within the meaning of the APA."); *see also Neal v. Secretary of the Navy*, 472 F.Supp. at 775.

■■ Having concluded that section 702 applies, *see Beller v. Middendorf*, 632 F.2d 788 (9th Cir. 1980); *Sheehan v. Army and Air Force Exchange Service*, 619 F.2d 1132 (5th Cir. 1980), the remaining question is whether plaintiff's action is one which arises under the Constitution or laws of the United States. The last definitive Supreme Court statement on the meaning of the phrase "arising under" is provided by Justice Cardozo in *Gully v. First National Bank in Meridian*, 299 U.S. 109, 57 S.Ct. 96, 81

L.Ed. 70 (1936). Paragraph one of the syllabus to *Gully* has been embraced by lower courts, *see, e.g., Florida Federal Savings & Loan Ass'n v. Bauer*, 515 F.Supp. 869 (M.D. Fla.1981), as a succinct definition of "arising under":

> To constitute a case arising under the Constitution or laws of the United States, ·. . . a right or immunity created by the Constitution or laws of the United States must be an essential element of the plaintiff's cause of action; the right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another.

*Gully v. First National Bank in Meridian*, 299 U.S. at 109, 57 S.Ct. 96; *see Hines v. Cenla Community Action Committee, Inc.*, 474 F.2d 1052 (5th Cir. 1973); *Cabana Management, Inc. v. Hyatt Corporation*, 441 F.2d 862 (5th Cir. 1971). In sum, "there must be a substantial claim founded directly upon federal law." 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3562, at 414 (1975).

Although somewhat ill-defined in the complaint, it appears that plaintiff seeks review of agency action, both enforcing the active duty pay-back obligation under AR 621–7 and determining his active duty assignment, on two theories. First, plaintiff challenges the validity of his "contract" with the Army, under which he accepted the subject fellowship, because of alleged misrepresentations made to him by the Army. Thus, he contends that the section AR 621–7 service obligation is not binding upon him. On a similar plane, plaintiff challenges his active duty assignment on grounds that it violates his "agreement" with the Army, and thus he seeks reassignment according to the terms of the alleged agreement. Second, plaintiff raises a con-

---

**3.** The APA provides an exception from judicial review for agency action which is committed to agency discretion by law. 5 U.S.C. § 701(a)(2). Arguably, see note 2, *supra*, the action pertaining to plaintiff's duty assignment falls within this exception. While the Court, in part II of this order, finds that, under the relevant case law, such action by the Department of the Army is discretionary and unreviewable, there is no specific statute directly precluding judicial review. *Cf. Neal v. Secretary of the Navy*, 472 F.Supp. at 773 n.20. Thus, for jurisdictional purposes only, the Court concludes that the section 701(a)(2) exception is inapplicable.

stitutional claim that enforcement of the service obligation required by AR 621–7 violates due process. Likewise, with respect to his active duty assignment, plaintiff asserts a duty process claim.

Assuming that the process of accepting a fellowship under the auspices of AR 621–7, once completed, constitutes a "contract" between the Army and the officer receiving the fellowship, the validity *vel non* of such a contract, because of alleged misrepresentations by one of the contracting parties, turns on general principles of contract law. *Cf. Peavy v. Warner*, 493 F.2d 748, 750 (5th Cir. 1974) ("[C]laims that enlistment contract are invalid or have been breached are decided under traditional notions of contract law."). While the purported contract was made pursuant to the authority of a federal statute and regulation, such federal laws are not an essential element of plaintiff's "misrepresentation" claim, nor does the success or failure of the claim hinge on a particular construction or effect judicially accorded these laws. *See Karlin v. Clayton*, 506 F.Supp. 642, 646 (D.Kan.1981).

Similarly, the claimed breach of an agreement concerning plaintiff's active duty assignment sounds in contract. Questions of whether an agreement existed and of whether a breach occurred are answered by resort to contract law. Clearly, federal law is not an essential element of the claim. Thus, both the challenge to the AR 621–7 service obligation and to plaintiff's active duty assignment, on contract theories, do not constitute claims which arise under the laws of the United States and thereby do not present a viable avenue for nonstatutory judicial review of agency action under section 702.

In contrast to plaintiff's action sounding in contract, it appears that plaintiff's constitutional claim, at least with respect to the AR 621–7 service obligation, falls within the jurisdictional grant of section 1331(a). It is well established:

> that cases depending directly on the construction of the Constitution are within the grant of federal question jurisdiction. It may be that the Constitution does not give the plaintiff the remedy he is seeking, but so long as his claim that it does is substantial, jurisdiction exists and a dismissal of his suit must be for failure to state a claim on which relief can be granted rather than for want of jurisdiction.

13 C. Wright, A. Miller, E. Cooper, *supra* § 3563, at 415. Resolution of plaintiff's contention, that the disparate service obligations incurred under AR 621–7 and AR 621–1 violate due process, is dependent upon a construction of the Constitution. Furthermore the question is substantial in the sense that it is neither clearly without merit nor wholly frivolous. *See id.* § 3564, at 427. Thus, subject matter jurisdiction is proper under section 1331,[4] and the Court may properly review plaintiff's constitutional challenge to the AR 621–7 service obligation pursuant to section 702 of the APA.

### B. Habeas Corpus

Under sections 1651, 2241(a) and 2241(c) of Title 28, district courts have power to grant a writ of habeas corpus to a "prisoner" in custody under or by color of authority of the United States. As recognized by the Supreme Court, "the term 'prisoner' has been liberally construed to include members of the armed services who have been unlawfully detained, restrained, or confined." *Schlanger v. Seamans*, 401 U.S. 487, 489, 91 S.Ct. 995, 997, 28 L.Ed.2d 251 (1971); *see Parisi v. Davidson*, 405 U.S.

---

4. A claim that plaintiff's duty assignment somehow violates the constitution stands on different footing. While the question may colorably involve a construction of Constitution, it cannot be termed "substantial." Case law on the subject is uniform in holding that a soldier's particular duty assignment does not rise to the level of a constitutionally protected interest.

*See, e.g., Arnheiter v. Ignatius*, 292 F.Supp. 911, 921 (N.D.Cal.1968), *aff'd*, 435 F.2d 691 (1970). *See also Woodward v. Moore*, 451 F.Supp. 346 (D.D.C.1978); *Suro v. Padilla*, 441 F.Supp. 14 (D.P.R.1976). Hence, the "federal question" presented by this aspect of plaintiff's constitutional claim is without merit and thus not cognizable under section 1331.

34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972). Hence, the federal courts have habeas corpus jurisdiction to consider varied claims of unlawful detention by members of the armed forces. *See Peavy v. Warner*, 493 F.2d 748 (5th Cir. 1974); *Glazier v. Hackel*, 440 F.2d 592 (9th Cir. 1971); *Santos v. Franklin*, 493 F.Supp. 847 (E.D.Pa.1980). While the standard of judicial review varies according to the nature of the military action complained of, *see Peavy v. Warner*, 493 F.2d at 749, it is settled that the permissible scope of review extends to the following claims: (1) that the armed services have failed to adhere to applicable statutes and regulations; (2) that the regulations and procedures employed by the military fail to comport with due process; and (3) that a branch of the armed services has breached an enlistment contract. *See id.; McCracken v. United States*, 502 F.Supp. 561 (D.Conn.1980); *Hickey v. Commandant of Fourth Naval Dist.*, 461 F.Supp. 1085 (E.D. Pa.1978); *Myers v. Parkinson*, 398 F.Supp. 727 (E.D.Wis.1975).

Defendants do not contest that section 2241 constitutes a waiver of sovereign immunity, but rather argue that habeas corpus jurisdiction does not lie in this case. First, defendants contend that "[t]he Army has complied with the requirements of the [pertinent] statute and regulation and there can be, therefore, no basis for habeas corpus relief." Second, defendants maintain that habeas corpus relief is premature since it is undisputed that plaintiff's service obligation, at a minimum, extends until January 15, 1983.

Defendants' first argument assumes that plaintiff's petition seeks relief on the ground that the Army has not followed applicable regulations and statutes. Certainly, as noted earlier, section 2241 is an appropriate vehicle for judicial inquiry into whether the military has violated its own regulations or a statute. *See e.g., Johnson v. Chafee*, 469 F.2d 1216 (9th Cir. 1972); *Friedberg v. Resor*, 453 F.2d 935 (2d Cir. 1971). *See also Peavy v. Warner*, 493 F.2d at 750 ("In reviewing claims that a branch of the military failed to comply with its own regulations the courts will look simply

for a showing by the claimant that the regulation was not followed and for a showing of prejudice to the petitioner."). Of course, as defendants apparently are contending here, if the military makes a showing, in the nature of a motion under Rules 12(b)(6) or 12(c), that the record clearly shows no statutory or regulatory violation, then a petition, claiming such an infraction, fails to state a viable claim for habeas corpus relief.

■ A review of plaintiff's petition, however, reveals that his section 2241 claim is bottomed on two distinct theories: (1) that the Army breached its contract concerning the terms and conditions of plaintiff's fellowship acceptance; and (2) that the service obligation incurred pursuant to AR 621–7 constitutes a violation of due process. The petition does not aver, as a basis for relief under section 2241, that the Army acted in violation of the subject regulations or statutes. Thus, defendants' contention that the Army complied with applicable regulations and statutes does not, of itself, divest the Court of habeas corpus jurisdiction where the petition specifies alternative, and judicially cognizable, grounds for relief.

■ Defendants' second argument, that review of plaintiff's petition at this time would be premature, is equally unavailing. The rule is well settled that immediate release need not be the only available relief before a court may entertain a habeas corpus petition. *Johnson v. Wright*, 509 F.2d 828, 832 (5th Cir. 1972), *cert. denied*, 423 U.S. 1014, 96 S.Ct. 445, 46 L.Ed.2d 384 (citing *Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); *Walker v. Wainwright*, 390 U.S. 335, 88 S.Ct. 962, 19 L.Ed.2d 1215 (1968)). As summarized by the Ninth Circuit: "It is clear from recent Supreme Court decisions that it is not a bar to habeas corpus that a ruling favorable to the petitioner will not result in his release, for, as the statute states, the habeas court is broadly empowered to 'dispose of the matter as law and justice require'." *Glazier v. Hackel*, 440 F.2d 592, 594–95 (9th Cir.

1971) (quoting 28 U.S.C. § 2243). Accordingly, on the basis of these authorities, plaintiff's petition is properly before the Court even though a favorable ruling may not result in plaintiff's immediate release.

## II

### JUSTICIABILITY

■ Although subject matter jurisdiction may be proper over one or more of plaintiff's claims, principles of justiciability may nonetheless preclude judicial review. While the doctrine of justiciability has been characterized as "a concept of uncertain meaning and scope," *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968), the Supreme Court has stated that courts, in determining the doctrine's applicability, must inquire "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." *Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962).

The justiciability doctrine has singular applicability when courts are asked to review actions and decisions within the domain of the armed forces. *See Doe v. Alexander*, 510 F.Supp. 900, 904 (D.Minn.1981) ("[R]eview of internal military affairs ... present[s] a question of justiciability whether it is done under the rubric of political question, non-reviewability or a policy akin to comity.") The judiciary is well aware that many decisions regarding the military rest within the special expertise of the various branches of the armed forces and that judges are ill-equipped to second guess such decisions. In particular, with respect to military duty assignments, the Supreme Court has recognized:

> [J]udges are not given the task of running the Army .... The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. While the

courts have found occasion to determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders, we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service.

*Orloff v. Willoughby*, 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). *See Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1975); *Covington v. Anderson*, 487 F.2d 660 (9th Cir. 1973); *Mindes v. Seamen*, 453 F.2d 197 (5th Cir. 1971); *Arnheiter v. Chafee*, 435 F.2d 691 (9th Cir. 1970); *Doe v. Alexander*, 510 F.Supp. 900 (D.Minn.1981).

Here, plaintiff seeks judicial review of his active duty assignment following completion of his graduate schooling. As discussed earlier, the Court has found no regulation directing the Army to provide plaintiff with a specific duty assignment. On the contrary, the regulatory scheme, as evidenced by AR 621–7 ¶ 14, vests decisions regarding duty assignments within the considered discretion of the military. To borrow the language of the Ninth Circuit, "the choice of a particular noncombatant duty assignment for an individual soldier ... involves precisely that kind of discretionary judgment about day-to-day military needs and the individual's capacity to fill them that *Orloff* warns are within the exclusive province of the military authorities and outside judicial competence." *Glazier v. Hackel*, 440 F.2d at 597.

■ Certainly, plaintiff has no constitutional right to a particular duty assignment which might warrant judicial protection, *see* note 4 *supra* ; nor is plaintiff suffering any perceivable injury as the result of his duty assignment which might give cause for judicial relief. With no significant factors compelling judicial intervention to counterbalance the strong policy reasons delimiting judicial review of military decisions, applicability of the justiciability doctrine is appropriate. Accordingly, the Court is constrained to decline review of plaintiff's duty assignment. *See West v. Brown*, 558 F.2d

757 (5th Cir. 1977); *cert. denied*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 520; *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971).

## III

## THE COMPLAINT STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Thus far, the Court has reviewed plaintiff's claims in the context of subject matter jurisdiction and justiciability. On the basis of the foregoing discussion of these issues, the Court concludes as follows: (1) jurisdiction to consider plaintiff's claim that the AR 621–7 service obligation violates due process and to accord appropriate relief exists under the APA and 28 U.S.C. § 2241; (2) jurisdiction to entertain plaintiff's contention that imposition of the AR 621–7 service obligation is in breach of plaintiff's fellowship agreement and to accord appropriate relief exists under 28 U.S.C. § 2241; (3) judicial review of plaintiff's active duty assignment on a constitutional challenge and contract theory is declined as nonjusticiable, and this aspect of plaintiff's complaint is dismissed; and (4) plaintiff's demand for a writ of mandamus to compel defendants to provide a computation of plaintiff's active duty obligation is dismissed for lack of subject matter jurisdiction.

As a final matter, defendants contend that plaintiff's allegations sounding in contract do not state a claim upon which relief can be granted. As previously discussed, plaintiff seeks equitable relief, in the form of an injunction and contract rescission, on grounds that the Army misrepresented the service obligation incurred under the particular fellowship at issue which induce plaintiff to accept the fellowship. In support of their Rule 12(b)(6) motion, defendants argue that the arrangement under which plaintiff completed the fellowship did not constitute an agreement akin to an enlistment contract. Even assuming, however, that the fellowship arrangement did amount to a contract and that misrepresentations were made, defendants invoke the well-traveled precept that "the United States is not bound by its agents acting beyond their authority and contrary to regulation."

■ The judiciary has long recognized that "on petition for habeas corpus the federal courts may consider service members' enlistment contract claims and decide them according to traditional principles of contract law." *Santos v. Franklin*, 493 F.Supp. 847, 851 (E.D.Pa.1980); *see Bruce v. United States Army*, 508 F.Supp. 962, 964 (E.D. Mich.1981). *See also Librizzi v. United States Navy*, 523 F.Supp. 434 (D.Conn.1981). Thus, enlistment contracts create valid and enforceable agreements between the parties, and the Army, as with any private party, "must fulfill its contractual promises and must be straightforward in its contractual dealings." *Novak v. Rumsfeld*, 423 F.Supp. 971, 972 (N.D.Cal.1976). *See generally McCracken v. United States*, 502 F.Supp. 561, 649 n.62 (D.Conn.1980) ("The cases construing [enlistment] contracts constitute an evolving body of specialized federal common law, developed in view of the strong federal interest in this area . . . and the need for uniformity in the interpretation of enlistment contracts.").

■ In this case, defendants apparently maintain that the fellowship agreement between the Army and plaintiff is not a contract, in the sense of an enlistment contract, and thus is not subject to traditional contract principles and remedies as judicially developed in actions concerning enlistment contracts. For present purposes, however, the Court finds such a distinction without merit. Certainly, the fellowship arrangement constituted an agreement between the parties, upon their mutual assent, for each to perform according to certain terms and conditions in consideration of the other party's performance. It cannot be disputed that plaintiff, in undertaking the fellowship program, incurred a new service obligation, although of disputed duration, beyond that required as the result of his attendance at West Point. Clearly then, purely with respect to the incurred service obligation, the fellowship agreement between the parties

was akin, in effect, if not form, to a "reenlistment" contract. *Cf. Shelton v. Brunson,* 465 F.2d 144 (5th Cir. 1972) (holding that if the Air Force had led petitioner to believe that he was eligible for a commission in order to induce him to reenlist, then the reenlistment contract was subject to rescission).

The law on rescission of military enlistment contracts was recently summarized by the district court in *Withum v. O'Connor,* 506 F.Supp. 1374 (D.P.R.1981):

> A recruit is entitled to rescind an enlistment contract if the military is unable to perform its obligation; if the terms of the contract are so ambiguous as to be misleading; *or if the recruit was induced to enter into the contract by fraud or false representations.* Even if the misrepresentations were innocently or non-negligently made, if they were material and induced the prospective recruit to enlist, the contract may be rescinded. It is not necessary, however, that the false representations deprive the recruit of every benefit of the contract.

*Id.* at 1378 (emphasis added). The so-called "actual authority doctrine," which provides that the United States is not bound by the unauthorized acts of its agents, *see Doe v. Civiletti,* 635 F.2d 88 (2d Cir. 1980), *Jackson v. United States,* 573 F.2d 1189 (Ct.Cl.1978), does not automatically foreclose rescission, or some other appropriate equitable relief, as a possible remedy. While there is some dispute on the effect of the "actual authority doctrine," *see McCracken v. United States, supra,* the Eighth Circuit states the better rule:

> This case [i.e. suit for rescission of an enlistment contract because of misrepresentations] is quite different from a suit against the government for misrepresentations in contracting in which the complaint seeks money damages or specific performance. The proposition that the government cannot be held responsible for the misstatements of its agents does not extend to representations which induce a contract when the remedy sought is rescission.

*Pence v. Brown,* 627 F.2d 872, 874 (8th Cir. 1980); *see Shelton v. Brunson, supra; Santos v. Franklin,* 493 F.Supp. at 855 ("[T]he law [does not] require such a draconian application of the actual authority rule."). *See also id.* (applying remedy of equitable estoppel against a branch of the armed forces).

While the foregoing discussion in no way reflects a decision on the merits of plaintiff's contract claim, the Court does find that, in the context of a Rule 12(b)(6) motion, the complaint states a claim for relief. *See* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 601 (1969) ("The question ... [on a Rule 12(b)(6) motion] is whether in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief."). Accordingly, defendants' motion to dismiss plaintiff's challenge to his service obligation on a contract theory for failure to state a claim upon which relief can be granted is DENIED.

## IV

### EVIDENTIARY HEARING

The above-captioned case shall come for an evidentiary hearing before this Court at 9:30 o'clock A.M. on the 8th day of March, 1982, at the United States Courthouse, Augusta, Georgia, at which time the following issues shall be considered: (1) whether enforcement of the service obligation incurred under AR 621–7, as opposed to the lesser AR 621–1 service obligation, constitutes a violation of plaintiff's fifth amendment due process rights; and (2) whether enforcement of the AR 621–7 service obligation is in breach of plaintiff's fellowship agreement, entitling plaintiff to relief under 28 U.S.C. § 2241. The duration of said hearing shall be no longer than one day, and the parties may submit pre-hearing briefs on the issues.

Having granted defendants' motion in part and denied it in part, defendants shall serve their answer within ten days from the date of this order.